480

**UNITED STATES, Appellee**

v.

**David R. CURTIS, Technical Sergeant U.S. Air Force, Appellant.**

No. 96–0104.
Crim.App. S28841.

U.S. Court of Appeals for the Armed Forces.

Argued Oct. 3, 1996.

Decided Jan. 22, 1997.

For Appellant: *Captain W. Craig Mullen* (argued); *Colonel Jay L. Cohen* (on brief); *Colonel David W. Madsen* and *Major Ormond R. Fodrea.*

For Appellee: *Major Allen G. Erickson* (argued); *Colonel Jeffery T. Infelise, Lieutenant Colonel Thomas E. Schlegel,* and *Captain Timothy G. Buxton* (on brief); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin.*

*Opinion of the Court*

COX, Chief Judge:

The issue in this drug-prosecution case is whether evidence regarding appellant's possession and use of Lasix, a nonprescription diuretic, was admissible, and if so, whether trial counsel's argument thereon was permissible.[1] A special court-martial composed of officer and enlisted members sitting at Davis–Monthan Air Force Base, Arizona, convicted appellant, contrary to his pleas, of possessing and using marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The members sentenced appellant to a bad-conduct discharge, confinement for 6 months, and reduction to E–4. The convening authority approved the adjudged sentence, and the Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

Appellant was an "aircraft technician/crew chief" who worked on "F–106s, T–33s, and B–57s." At the time of his court-martial, he had approximately 19 years and 11 months of creditable service.

The circumstances leading up to the court-martial originated in the civilian community when one of appellant's estranged sons reported to Tucson police officials that appellant was using drugs. Several days later,

---

1. The granted issue asks:
   WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF AP-PELLANT BY ALLOWING QUESTIONS, TESTIMONY, AND ARGUMENT CONCERNING LASIX.

another of appellant's estranged sons requested and received police assistance while he removed certain personal items from appellant's home. At the home, the responding officer spoke to appellant and detected an odor of marijuana emanating from his mouth.

A search of appellant's home a few days later produced nominal quantities of marijuana plant parts, as well as various containers and paraphernalia containing or coated with marijuana residue. All contraband items were seized from the master bedroom and an adjacent closet. Analysis of a urine specimen submitted voluntarily by appellant the day of the search resulted in a "positive" finding of marijuana metabolite.

During the Government's case-in-chief, a forensic toxicologist testified that "Lasix is a trade name for a drug called furosemide, I believe. It's a diuretic. It's used for certain patients to increase fluid output." This testimony was adduced without defense objection during the witness' general explanation of the laboratory testing of appellant's urine specimen. Trial counsel had asked the toxicologist to explain the "Lasix" entry contained on one of the laboratory forms. The witness explained that this reflected a request by "the local submitting unit" to test appellant's urine for Lasix. The witness also testified that, as far as he knew, Lasix testing was not performed on appellant's urine and that his laboratory, in any event, was not equipped to conduct such a test.

During examination of the same witness by the court, a member submitted a written question again asking, *inter alia*, why Lasix testing was not performed. The military judge paraphrased the question in the following manner without defense objection:

MJ: I understand that there's an objection [2] to the second question; however, it was covered briefly during, I believe, direct examination. I am going to ask it.

Q. Doctor, ... with reference to Column E, why is the annotation "Lasix" in there, if you know?

A. **My understanding of the sample or the circumstances was that there was suspicion that the individual was taking Lasix to dilute the urine sample; and, therefore, they requested that the sample be tested for the presence of Lasix.**

(Emphasis added.) The toxicologist went on to explain again that relatively few laboratories were set up to test for Lasix and that his laboratory was not one of them.

During cross-examination on the merits— and over defense objection as to relevance— appellant was asked about the "substance in [his] house that was seized by the OSI called ·Lasix...." Appellant confirmed that such a substance was seized from his house and that he had obtained it "from an acquaintance." Appellant testified that he had used the substance "about a year and a half ago" to help him in a weight-loss program. According to appellant, the acquaintance represented that Lasix "takes water off. If you take it the day before you go weigh in, you'll weigh considerably less." Appellant acknowledged that "it did make [him] go to the bathroom more."

In closing argument, trial counsel adverted briefly to the toxicologist's description of Lasix, to appellant's possession of it, and to appellant's understanding of its properties. In addition, counsel patently implied that Lasix was something appellant used to mask his marijuana usage.

At the outset, we agree that the investigators' intentions with respect to Lasix testing were irrelevant and that, in any event, the toxicologist was not the proper person to declare that intent. Nevertheless, it was not the investigators' intent that caused appellant problems; it was the evidence that appellant knowingly possessed and used Lasix, understanding its properties, coupled with the toxicologist's explanation of it. If this evidence was properly received, the investigators' intent was obvious, and appellant could not have been prejudiced. Art. 59(a), UCMJ, 10 USC § 859(A).

---

2. The military judge's mention of this objection is the only reference to it in the record, as far as we can determine. Nonetheless, appellate defense counsel assert that the basis for the objection was relevance. Final Brief at 3. Indeed that, or hearsay, or perhaps lack of personal knowledge seem plausible under the circumstances.

■ Thus, the question is, in a prosecution for drug possession and use, is it relevant that the accused also possessed a substance which might reduce the possibility of his testing positive on a urinalysis? The military judge and the Court of Criminal Appeals answered this question in the affirmative, and so do we.

■ As a general proposition, all evidence is relevant as long as it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable tha[n] it would be without the evidence." Mil. R. Evid. 401, Manual for Courts–Martial, United States (1995 ed.) Furthermore, "[a]ll relevant evidence is admissible, except as otherwise provided . . . ." Mil. R. Evid. 402. One such exception is Mil. R. Evid. 403, which excludes evidence, although relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . .," etc. We review a military judge's ruling admitting or excluding evidence for abuse of discretion, *United States v. Sullivan*, 42 MJ 360, 363 (1995). We find no abuse here.

A number of inferences might be drawn from the finding of Lasix in appellant's home. One of them, obviously is that appellant used it, as he testified, for weight reduction. Indeed, the findings of guilty do not, in and of themselves, establish that the members rejected this assertion. Another possible inference is that the Lasix belonged to a different member of the household and had no nexus to appellant. Appellant's own testimony, however, seems to have eliminated this inference.

Another inference quite clearly available, however, is the one argued by the prosecution—that the Lasix was used by appellant to minimize his chances of getting caught in a random urinalysis. In this respect, the Lasix constitutes indirect evidence of the charged offenses by showing an effort to avoid detection. Moreover, it shows consciousness of guilt, rebutting a claim of innocent ingestion.[3]

Under the circumstances of the instant case, we are satisfied that the military judge adequately balanced the pertinent relevance factors and that the probative value of appellant's possession and use of Lasix was not outweighed by any unfair prejudice or confusion that may have been caused by admission of this evidence. Thus, we are also satisfied that trial counsel's comment thereon in closing argument was permissible.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judges CRAWFORD, GIERKE, and EFFRON concur.

SULLIVAN, Judge (concurring):

The substance "Lasix" was found inside appellant's home by police executing a valid search warrant. *See United States v. Procopio*, 88 F.3d 21, 29–30 (1st Cir.1996) (guns found at accused's apartment admitted to show association in criminal venture). The military judge considered the probative value of this evidence and the potential for undue prejudice. *See* Mil. R. Evid. 403, Manual for Courts–Martial, United States, 1984. I see no legal error. *See United States v. Golb*, 69 F.3d 1417, 1428 (9th Cir.1995) (traces of cocaine on money involved in criminal scheme).

---

**3.** The theory of the defense, in order to explain appellant's positive urinalysis, was that one of appellant's estranged son's must have put marijuana in cookies he baked for appellant. Regarding the contraband found in appellant's bedroom and closet, it was the defense position that it belonged to appellant's wife who, without appellant's knowledge, smoked marijuana regularly.